UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

-v-

DWAYNE RICHARDSON,

Defendant.

-------------------------------------------------------------------X

26-CR-00124 (JAV)

OPINION AND ORDER

JEANNETTE A. VARGAS, United States District Judge:

On July 27, 2026, Defendant Dwayne Richardson ("Defendant") moved to suppress the DNA evidence obtained from an oral swab of his person pursuant to a search warrant issued on June 9, 2026. ECF No. 16 ("Def. Mot."). Defendant argues that the Government's warrant application failed to establish the required nexus between the DNA swab and Richardson's alleged possession of a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1). *Id.* at 3. In the alternative, Defendant argues that the Government's supporting affidavit omitted material facts necessary to the finding of probable cause, justifying a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Def. Mot. at 6-11. For the reasons that follow, the motion to suppress is **DENIED**.

## BACKGROUND

The relevant facts are largely undisputed. Defendant was convicted in 2023 of attempted criminal possession of a weapon in the second degree and sentenced to a term of three years imprisonment. ECF No. 1, ¶ 3 ("Complaint."). Defendant was

released on parole in May 2025. *Id.* As a condition of his parole, Defendant was subject to warrantless searches of his person, residence, and property. *Id.*

On October 30 and October 31, 2025, Defendant failed to report to his assigned parole officer. *Id.*, ¶ 4. On October 31, New York State Department of Corrections and Community Supervision ("DOCCS") officers additionally received a report that Defendant had brandished a firearm earlier that day. *Id.* Accompanied by NYPD officers, DOCCS officers visited Defendant's apartment to perform a "safety search" and, finding the door unlocked, entered. *Id.* Defendant's assigned parole officer, having visited the apartment earlier that month and having heard from Defendant that Defendant lived in the "first bedroom," proceeded to what he perceived to be Defendant's bedroom. *Id.* The officer knocked and then tried the handle, which was locked. *Id.* Defendant then opened the door. *Id.*

DOCCS officers explained their intention to search the bedroom and handcuffed Defendant, who stated that he resided in the bedroom and verbally consented to the search. *Id.* In a closet attached to the bedroom, DOCCS officers found a 9mm Ruger semi-automatic pistol, approximately fifty Speer "Lawman" 9mm cartridges, and a SOLOFISH laser sight. *Id.* DOCCS officers then searched the other bedroom, whose occupant—another parolee—stated that Defendant resided in the first bedroom. *Id.* NYPD officers, who had previously been waiting outside the building, then entered the apartment and arrested Defendant. *Id.*

Defendant waived his *Miranda* rights and agreed to a post-arrest interview with a detective. *Id.* In that interview, carried out at the NYPD's 47th precinct,

Defendant acknowledged living in the apartment but denied residing in the searched bedroom, explaining that he was inside the bedroom at the time of the search because he was heating food in the microwave there. Def. Mot., Ex. 2 at 6:20-7:44. Defendant was ultimately charged on April 1, 2026, with possession of a firearm after a felony conviction in violation of 18 U.S.C. § 922(g). ECF No. 7.

Having seized the firearm found in the searched bedroom, NYPD officers swabbed it for DNA material and sent the swabs to the New York City Office of the Chief Medical Examiner (OCME) for analysis. Def. Mot, Ex. 1 ("Warrant App."), Ex. A ("Landusky Aff."), ¶ 7. On May 29, 2026, the OCME reported that two of the swabs contained suitable samples of DNA for comparison. *Id.*, ¶ 8.

On June 9, 2026, Detective Landusky applied for, and Magistrate Judge Willis signed, a search warrant to collect a sample of Defendant's DNA by buccal swabbing. *See generally* Warrant App. The search warrant was supported by an affidavit from Detective Landusky, which incorporated by reference the Complaint. Landusky Aff., ¶ 4. Detective Landusky conducted the buccal swab of Defendant on June 23, 2026. Def. Mot. at 3.

**LEGAL STANDARDS**

The Fourth Amendment protects against "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A buccal

swab for DNA is a search under the Fourth Amendment. *Maryland v. King*, 569 U.S. 435, 446 (2013).

To demonstrate probable cause in its application for a search warrant, the government must "set[] forth facts sufficient to enable a reasonably prudent person to believe a search of the areas described within the warrant will uncover evidence of a crime." *United States v. Serrano*, 937 F. Supp. 2d 366, 372 (E.D.N.Y. 2013) (citing *Berger v. New York*, 388 U.S. 41, 55 (1967)). The magistrate judge evaluating the application then must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

A defendant may challenge the validity of a search warrant by showing that the magistrate judge's "probable-cause determination reflects an improper analysis of the totality of [the] circumstances." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015). Yet a magistrate judge's decision that probable cause exists "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236.

A defendant may be entitled to a *Franks* hearing if he "makes a substantial preliminary showing" that there were "intentional and material misrepresentations or omissions" in the affidavit supporting the warrant. *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003). A misrepresentation or omission is intentional when "the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth." *Id.* In determining materiality of an

omission, the Court considers whether, if the omitted material had been included in the affidavit, "'the affidavit would still establish probable cause.'" *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (quoting *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980)).

If the search warrant is voided—either for lack of probable cause on the face of the warrant application, or after false material is excluded or omitted information is included following a *Franks* hearing—the fruits of the search must be suppressed. *Id*. at 156.

## DISCUSSION

### A. Probable Cause

Defendant argues the government did not have probable cause to swab his DNA because the warrant application alleged that he constructively possessed the seized firearm, not that he physically handled it. *See* Def. Mot. at 5. Constructive possession occurs when a person has "dominion and control" of an object; it is not necessary for the person "to touch or exercise *exclusive* control over contraband to possess it." *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988). A defendant may be found to constructively possess contraband seized from an apartment when, as here, the defendant "lived in the apartment and was not a mere visitor" and "was in the same bedroom as [the contraband] when the police arrived." *Id*.

The fact that the Defendant does not *need* to have touched the firearm to possess it, however, does not imply that Defendant *did not* touch the firearm. Indeed, the facts alleged by the government in its warrant application established a reasonable probability that swabbing Defendant's DNA would reveal evidence that

Defendant touched the firearm: DOCCS received a report on the day of the search that Defendant had brandished a firearm to another individual, Defendant said (but later retracted) that the bedroom in which the firearm was found was his, and Defendant was found by DOCCS officers in that bedroom with the door locked. *See* Complaint, ¶ 4. Defendant's roommate also told DOCCS officers that Defendant lived in the bedroom where the firearm was found. *Id.* Later OCME testing confirmed that swabs from the firearm contained suitable DNA samples for comparison. Landusky Aff., ¶ 8. These facts are not in dispute. Together, they form a substantial basis upon which Magistrate Judge Willis could determine that probable cause existed to swab Defendant's DNA for comparison with the DNA found on the firearm.

If anything, the evidence provided to Magistrate Judge Willis in support of the warrant application was more extensive than other courts have found sufficient to support a probable cause determination. For example, in *United States v. Harrison*, the district court found probable cause existed to swab a defendant's DNA where "the search of [an] apartment turned up a handgun with an altered or unreadable serial number" and the defendant was found in a nearby room while "two other people present at the time denied knowledge of the firearm." 683 F. Supp. 3d 184, 204 (N.D.N.Y. 2023). Additionally, the Second Circuit has held that the Fourth Amendment does not require "certainty that there [is] a sample against which to compare" a defendant's DNA to support probable cause for a DNA swab. *United States v. Leeper*, 187 F.4th 11, 21 (2d Cir. 2026). Such a sample is present

here, raising the probability of finding a DNA match above the floor established in *Leeper*.

**B. *Franks* Hearing**

Alternatively, Defendant argues that Detective Landusky's affidavit submitted in support of the warrant application omitted material facts crucial to the probable cause inquiry, warranting a *Franks* hearing. In particular, Defendant asserts that the affidavit omitted (1) Defendant's repeated denials, during his post-arrest interview, that he lived in the bedroom where the firearm was seized, (2) the fact that the apartment is a "high-traffic, transitional housing unit" and that Defendant's roommate was another parolee, and (3) that two other women were present in the apartment at the time of the search. Def. Mot. at 8-9. Defendant contends these omissions "raise serious doubts" as to the existence of probable cause to suspect that Defendant's DNA was likely to be found on the seized firearm. *Id.* at 11.

Yet the Complaint includes all of this context. The Complaint (1) states that Defendant "claim[ed]" he had just changed rooms with his roommate the night before the search in his post arrest interview, (2) refers to the occupant of the second bedroom as "a separate individual under parole supervision," and (3) references "[t]wo females [who] were found in the common bathroom . . . at the time of the parole search." Complaint at ¶ 4(i), 4(g) & 4(d) n.2. And the Complaint was "incorporated by reference" in, and attached to, Detective Landusky's affidavit as

submitted to Magistrate Judge Willis. Landusky Aff., ¶ 4. Therefore, the full warrant application disclosed the facts that Defendant claims were omitted.

To the extent that Defendant suggests that the magistrate judge could not consider information contained in the Complaint that was not also repeated in the body of the Landusky Affidavit, there is nothing that precludes an affidavit in support of a warrant from incorporating by reference information contained in another document, so long as the incorporated document accompanies the warrant application. *Cf. Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004). Defendant cites *United States v. Falso,* 544 F.3d 110, 122 (2d Cir. 2008), for the proposition that "[a]ll data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." Def. Mot. at 3-4. Yet *Falco* does not address the practice of incorporating documents by reference. Rather, in *Falso*, the district court was faulted for finding probable cause based on "fallacious inferences drawn from facts not supported by the affidavit." 544 F.3d at 122. And the "four corners" language originated in a Ninth Circuit case, *United States v. Anderson*, that criticized reliance upon oral information supposedly given to the judicial officer but unrecorded in writing. 453 F.2d 174, 176 (9th Cir. 1971).

Because the magistrate judge could properly consider the incorporated document, Defendant has failed to show material omissions from the warrant application. *See United States v. Nejad*, 436 F. Supp. 3d 707, 722 (S.D.N.Y. 2020) (rejecting motion for *Franks* hearing where application "fails to even identify any

false statements or omitted truths, prerequisites to the application of the *Franks* doctrine."). Additionally, the submission of the Complaint to the magistrate judge in connection with the warrant application undercuts any suggestion that information found in the Complaint was deliberately withheld from the magistrate judge for the purpose of misleading her as to the existence of probable cause.

## CONCLUSION

Defendant's motion to suppress or for a *Franks* hearing is therefore DENIED. The Clerk of Court is directed to terminate ECF No. 16.

SO ORDERED.

Dated: November 19, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge